Turney, J.,
delivered the opinion of the Court.
On the 13th day of March, 1865, John J. Staun-ton commenced, by original summons and attachment, suit in the Common Law and Chancery Court of Memphis, against Valentine Werner, attaching real estate in the City of Memphis. On the 21st day of October, 1865, Staunton obtained the following judgment :
“ The defendant, by his attorney, withdraws his. plea herein filed. It is, therefore, adjudged by the court that the plaintiff recover of the, defendant the sum of two thousand and fifteen dollars debt, and the sum of three hundred and forty-nine dollars damages,, and also the costs in this suit, and that execution issue.”
Execution issued on the 29th of November, 1865, and was returned endorsed:
“This writ came to hand October 21, 1865, the same having been, by P. M. Winters, Sheriff Shelby county, on attachment in above cause, on March 13, 1865, levied on and attached by virtue of attachment *581 in this cause, on one certain lot of land, being part of lot No. 2, B. No. 43, fronting 80 J feet on Vance street, and 116¿ feet on Casey street, being the South"west corner of said lot in block No. 43, and by the Common Law Court of Memphis condemned for sale. I advertised said real estate according to law, and sold it in legal hours January 27, 1868, in front of Court House, Memphis, to J. S. Staunton, for $2,450, he being highest, best, and last bidder.
“P. M. Winters, Sheriff.
“By J. E. Langford, D. S.”
This return is not very intelligible, but sufficiently so to show that no levy of the execution was made, 'therefore the sale under it was void. Its recital of an order of condemnation is untrue in fact, but if true would have added nothing to it. On the 14th of March, 1865, Williams, and Mix & Co., and Ellison & Co., and on the 16th of April, 1865, Boyd, respectively and consecutively in the order here named, filed bills in the Chancery Court against Werner, attaching lots Nos. 1' and 2, which are parts of the lot claimed to have been attached and sold at the suit of Staunton. On the 6th of June, 1865, by consent, a decree in the three chancery causes was pronounced consolidating them, and decreeing: “A sale of the following property, attached in these causes, shall now be made, waiving all exceptions which could be taken thereto. .' . . . That the Clerk and Master, after giving the notice required by law, sell at public auction, to the highest bidder, all the right, title, claim, and interest of defendant, Werner, in and *582 to the following lots/’ etc., describing lots 1 and 2, proceeding: “ Also a private alley in the rear on the north of said lots.”
This decree was kept alive by revivor till the 14th of August, 1866, when it was executed by sale to Staunton for twelve thousand dollars ($12,000), on time, which was confirmed December the 12th, 1866. On the 13th of April, 1866, Hillman Brothers, recovered against Werner the following judgments.
"It is, therefore, considered by the court that the plaintiff recover of the defendant the sum of $1,460.69, the amount of damages assessed by the jury, and also the costs of this suit, and that execution and order of sale issue.” . ..
“It is, therefore, adjudged by the Court that the plaintiff recover of the defendant the sum of twenty-seven hundred and eighty-nine dollars and forty cents debt and damages, and also the costs of this suit, and that execution issue; it is further ordered that an order of sale issue herein.”
On the 21st of March, 1866, Mrs'. Elizabeth 'E. Harris filed her bill against Werner, Mix & Co., Ellison & Co., Williams, and Boyd, alleging amongst other things that Werner was the owner in fee of the real estate already described. Recognizing the pendency of the several attachment bills already mentioned, asking the privilege of looking into the causes, and having the benefit of any defect in the proceed--ings praying an attachment. That she have priority over the other attaching creditors; or if that can not be given, that she have any surplus there may be- *583 applied to her debt. That the realty be sold, and' for general relief, etc.
On the 29th of August, 1866, Hillman Brothers-filed their bill alleging their judgments, the issuance- and return nulla bona of two executions upon each ;: that they had issued, in aid of their suits at law, attachments; the sale of the lots under the decree in Chancery, and praying that after a satisfaction of the prior liens the surplus be applied to their debts. On, the 4th of October, 1867, they filed an amended bill,, alleging that the executions at law were issued without their direction; that it was their purpose, by the original bill,. to ask the aid of the Chancery Court in the enforcement of their liens by levy of attachment in the causes at law, and praying for their enforcement out of the proceeds of sale.
On the 3d of May, 1867, Staunton filed a petition asking that his notes for the purchase money be-abated by the amount of his judgment, the value of the alley, the amount of taxes due and unpaid at the time of his purchase, and the costs of the three first Chancery causes. Property attached is in the custody of the law, and can not be condemned until there is judgment against the debtor-owner, and then, the judgment of condemnation must be certain and specific, so describing the property, attached and condemned as that from the judgment a writ of venditioni exponas may issue deriving its direction and authority from the judgment. It is to the judgment alone the Clerk must look for the authority for a writ for its execution; that writ must pursue-the judgment, which *584 is an important link in the purchaser’s chain of title. An attachment is ordinarily a proceeding in personam, and not in rem, its primary purpose being to give the court jurisdiction of the person of the owner, to render judgment against him. The judgment against the person only awards execution against the mass of the defendant’s property, without specific lien upon any, except such as is given in law by the mere rendition. In Amyete’s Lessee v. Backhouse, 3 Murphy, it is said: “ The only effect of issuing the attachment and having it levied, was to give the court jurisdiction whereby judgment might be obtained. In this case the levy was made upon the land, but no judgment was subsequently entered condemning the land to satisfy the final judgment which might be rendered. When this final judgment was rendered the lands levied on were thrown into the general mass of landed property belonging to the defendant. By taking out an execution generally, as is done in ordinary cases, the lien created by the attachment was lost, and the title to the land vested in the lessor of the plaintiff, the deed to him being executed long before either the judgment was obtained or an execution issued.” The rule applies in all its. force to the claims of Staunton and Hillman Brothers. The rendition of their judgments was an abandonment of their liens by attachment, perfected by the adjournment of the terms of the court rendering the judgments.
Taxes are an incident to eminent domain, or ultimate dominion of the State over the subject of property. The power of taxation is impliedly reserved *585 In all grants of realty, and expressly delegated by the Constitution. The right of the State to collect taxes follows real property inherently into whosesoever hands it may go; no judgment or attachment can have priority over it. When land is sold by constraint of law, as in this case the purchaser becomes a debtor to the Sovereign for the taxes; that is, he takes the property thus encumbered, and while he may collect of the party, as whose property the land was sold, he can not abate the price agreed to be paid for the benefit of creditors by unpaid taxes. Not only has eminent domain impressed the property as taxable, but the law has declared the per cent, and made record of it; the purchaser at such sale is conclusively presumed to know these things, and the rule, “caveat emptor,” must apply. It is different when the sale by the Master is merely a mode of sale by the parties themselves, that they may, for reasons of their own, convert their interest into money, or for lilje purposes. The fact that the decree of sale was consented to at the time makes no difference in this case. That consent was the'result the law had been invoked to, and would have consummated without it, hence .the decree is, notwithstanding the consent, invito domino. The question of abatement of the purchase money by amount of the value of the alley is not before us by appeal. After paying the attaching creditors in their order, the surplus will be applied to the debt of Hillman Brothers. No fee allowed C. & M. Alston for transcript.
Affirm the decree.